Ronald A. McIntire, Bar No. 127407
RMcIntire@perkinscoie.com
Gillian C. Kuhlmann, Bar No. 316241
GKuhlmann@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-9900
Facsimile: (310) 788-3399

Paul David Meyer, Bar No. 304392
pmeyer@orrick.com
Deena Dulgerian, Bar No. 321836
ddulgerian@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone: (415) 773-5806

Attorneys for Plaintiff
STEPHEN MORELAND REDD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

STEPHEN MORELAND REDD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHIEF JUSTICE TANI GORRE CANTIL-SAKAUYE, ORANGE COUNTY SUPERIOR COURT JUDGE KIMBERLY MENNINGER, and all others similarly situated,

Defendants.

Case No. 2:16-cv-01540-DMG

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF -- CLASS ACTION**

## JURISDICTION AND VENUE

1. The claims alleged herein arise pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law.

2. Venue is properly in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because the named Plaintiff's claims for relief arose in this District.

## CLASS ACTION ALLEGATIONS

**PLAINTIFFS**

3. Plaintiff Redd is an individual sentenced to death by the Orange County Superior Court on February 28, 1997. Finding that Plaintiff Redd was indigent and qualified for the appointment of state-funded counsel, on June 22, 2001, the California Supreme Court appointed appellate counsel to represent him in his automatic appeal. In a published opinion issued on April 29, 2010, the California Supreme Court affirmed Plaintiff Redd's convictions and death sentence. Upon the entry of judgment by the Orange County Superior Court in 1997, Plaintiff Redd was entitled to state-funded counsel to represent him in state post-conviction proceedings. Despite Plaintiff Redd's unqualified right to the appointment of such counsel, more than 22 years after being sentenced, Plaintiff Redd still awaits the appointment of qualified habeas corpus counsel to represent him in state habeas proceedings. Plaintiff Redd is confined and resides in San Quentin State Prison, located in Marin County.

4. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) on his own behalf and on behalf of all other indigent persons who have been sentenced to death by the State of California and who have been deprived of the timely appointment of counsel to represent them in state habeas corpus proceedings,

including those who are sentenced to death but who have not received state habeas corpus counsel after the date that the class has been certified (the "Plaintiff Class").

5. The Plaintiff Class is so numerous that joinder is impracticable: The Plaintiff Class currently includes 363 people. Three of these individuals have death sentences from more than one county, and therefore 366 cases lack the appointment of counsel. The Plaintiff Class will increase in size after the class is certified because the rate at which California courts impose new death sentences outpaces the rate at which state habeas corpus counsel is appointed. Between January 1, 2013, and December 31, 2017, the state imposed an average of 15 death sentences per year, while appointing counsel for indigent death-sentenced persons in an average of only 5.4 cases. Indeed, there have been no new habeas corpus counsel appointments to represent indigent death-sentenced persons since 2016.

6. The claims of the Plaintiff Class members share common issues of law, including but not limited to whether the failure to appoint state habeas corpus counsel in a timely manner violates the Due Process Clause of the Fourteenth Amendment.

7. The claims of the Plaintiff Class members share common issues of fact, including but not limited to whether the state routinely fails to appoint state habeas corpus counsel until years after it sentences a person to death and the causes behind the state's failure to appoint state habeas corpus counsel to represent indigent death-sentenced persons.

8. The claims of the named Plaintiff are typical of the claims of members of the Plaintiff Class. Plaintiff Redd was sentenced to death by the State of California on February 28, 1997. Upon being sentenced to death, Plaintiff Redd, who is indigent, was entitled to appointed state habeas corpus counsel. *See* Cal. Gov't Code § 68662. Plaintiff Redd, as with the other members of the Plaintiff Class, has been deprived of his right to the timely appointment of counsel to represent him in his state habeas corpus proceedings.

9. The named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. The named Plaintiff has no interests that are now or may be potentially antagonistic to the interests of the class. The attorneys representing the Plaintiffs include experienced civil rights attorneys who are able federal practitioners and should be appointed as class counsel.

10. Defendants have refused to act on grounds generally applicable to the Plaintiff Class, thereby making final declaratory relief appropriate to the class as a whole. Specifically, Defendants have refused to appoint the state habeas corpus counsel to which all class members are statutorily entitled, making the requested final declaratory relief appropriate to the entire Plaintiff Class. Therefore, the Plaintiff Class may be properly certified pursuant to Fed. R. Civ. P. 23(b)(2).

**DEFENDANTS**

11. Defendants are responsible for assigning state habeas corpus counsel to Plaintiff and those similarly situated and ensuring that counsel have sufficient resources to investigate, develop, and present potentially meritorious claims for relief in state post-conviction proceedings. Defendants have refused to appoint in a timely manner the state habeas corpus counsel to which all class members are statutorily entitled.

12. Defendant Justices of the California Supreme Court are Chief Justice Tani Gorre Cantil-Sakauye, the Honorable Ming W. Chin, the Honorable Carol A. Corrigan, the Honorable Goodwin H. Liu, the Honorable Mariano-Florentino Cuéllar, the Honorable Leondra R. Kruger, and the Honorable Carlos R. Moreno (collectively, the "Defendant Justices"). From 1977 to April 29, 2019, the Defendant Justices and their predecessors had the duty to appoint post-conviction counsel for death-sentenced persons. The Defendant Justices are sued in their official capacities.

13. The Honorable Tani Gorre Cantil-Sakauye is Chief Justice of the California Supreme Court. Chief Justice Cantil-Sakauye is responsible for the administration of the Judicial Branch of the State of California. Prior to April 29,

2019, she and her predecessors were responsible for the appointment of state habeas corpus counsel for death-sentenced persons. She is sued in her official capacity, as are her predecessors in office.

14. Defendant Judges of the Superior Courts of California (collectively, the "Defendant Judges") are all Judges who, as of April 29, 2019, are responsible for appointing post-conviction counsel to individuals subject to a capital sentence imposed by each superior court, pursuant to Cal. R. Ct. 4.545-4.562. The Defendant Judges are sued in their official capacities.

15. The Honorable Kimberly Menninger is a Judge of the Superior Court of California, County of Orange. Orange County Superior Court Judge Menninger is charged by law with appointing post-conviction counsel to Mr. Redd or, in the alternative, with assigning Plaintiff Redd's case to another Orange County Superior Court Judge for such an appointment. She is sued in her official capacity, as are her successors in office.

16. Plaintiffs bring this action against the subclass of Defendant Justices, represented for purposes of this class action complaint by Chief Justice Cantil-Sakauye, and against the subclass of Defendant Judges, represented for purposes of this class action complaint by Superior Court Judge Menninger (collectively, the "Defendant Class"). This action may properly be maintained as a class action, pursuant to Fed. R. Civ. P. 23(a)(1)-(4), Fed. R. Civ. P. 23(b)(1),(2), (3), and/or Fed. R. Civ. P. 23(c)(4) and the case law thereunder.

17. The members of the Defendant Class, and of each Defendant subclass, are so numerous that joinder of all members is impracticable. The Defendant Justices include the named Justices in Paragraph 12 as well as their predecessors who were responsible until April 29, 2019 for appointing members of the Plaintiff Class with post-conviction counsel and failed to do so. The Defendant Judges include the named Judges in Paragraphs 14-15 and all of their successors who will be charged with appointing post-conviction counsel to death-row inmates.

18. The named Defendant Class members have defenses typical of the class because their position relative to death-row inmates without post-conviction counsel is the same as other class members. All Defendants are bound together because of their common obligation to adhere to California law and policy regarding appointment of post-conviction counsel to death-row inmates.

19. The named Defendants will fairly and adequately protect the interests and represent the members of each subclass. Neither representative has interests relating to these constitutional claims that are in conflict with the interests of other class members that would preclude their acting as representatives of the Defendant Class.

20. A class action is superior to all other available means for the fair and efficient adjudication of the Plaintiff Class's claims. It would be impracticable to sue each of the members of the Defendant Class to redress the harms done to the Plaintiff Class. All Defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious. The benefits of adjudicating this controversy as a class action far outweigh the difficulty, if any, in managing the class.

21. Common questions of law and/or fact exist as to all members of the Defendant Class, and these common issues predominate over any questions solely affecting individual members of the class. Whether Plaintiffs' constitutional rights have been violated by Defendants' past and continuing failure to assign habeas corpus counsel to indigent death-sentenced persons, as required by statewide law and policy, is a question common to all Defendants.

22. Certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) is also appropriate because: (i) separate actions against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; (ii) separate actions against individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members

not parties to the adjudications or substantially impair or impede their ability to protect their interests; and (iii) all Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole.

23. Reasonable notice shall be given as directed by the Court to the Defendant Class as provided by Fed. R. Civ. P. 23(c)(2)(A). If a class is certified pursuant to Fed. R. Civ. P. 23(c)(2)(B), the best notice practicable under the circumstances, including, where appropriate, individual notice to all members who can be identified through reasonable efforts, shall be given.

24. Plaintiffs seek certification of one class composed of the two Defendant subclasses. The named Defendants are sued individually, in their official capacities, and as representatives of the proposed Defendant Class. Plaintiff's proposed Amended Complaint seeks declaratory relief, including a declaration of the Plaintiff Class's right to due process of law. Plaintiff seeks certification of the Defendant Class for the purposes of determining Defendants' liability.

25. In the alternative, Plaintiffs seek certification of two Defendant Classes, subject to the Court's ongoing power to modify the classes if necessary, under Rule 23(b)(2): (1) all current and formerly serving Chief Justices and Justices of the California Supreme Court and (2) all current and future serving Superior Court Judges of the State of California. Each Defendant Class meets the criteria of Rule 23(b)(2), and each is sued in an official capacity.

**DEATH PENALTY IN CALIFORNIA**

26. In February 1972, the Supreme Court of California ruled that the state's death penalty laws violated the California Constitution's ban on cruel and unusual punishment, in part because of the "brutalizing psychological effects" of the "lengthy delays between pronouncement of the judgment of death and the actual execution." *People v. Anderson*, 6 Cal. 3d 628, 650 (1972). Over the next five years, the legality of the death penalty was tested by ballot measures and considered by the California

Supreme Court and the U.S. Supreme Court. *See* Cal. Prop. 17 (1972); *see also Furman v. Georgia*, 408 U.S. 238 (1972); *Rockwell v. Superior Court*, 18 Cal. 3d 420 (1976).

27. In 1977, the California Legislature enacted a statute that enumerated several murders as capital crimes. 1977-78 Reg. Sess. (Cal. 1977) (the "1977 Law"). The 1977 Law was superseded when, on November 8, 1978, a majority of California voters approved Proposition 7, commonly called the "Briggs Initiative" after Senator John Briggs who sponsored the measure. Cal. Prop. 7 (1978). The Briggs Initiative expanded the application of capital punishment in California by increasing the number of, and broadening, the special circumstances contained in Penal Code section 190.2. California Commission on the Fair Administration of Justice, Final Report 120 (2008) ("Comm. Rep."). Under the death penalty statute catalyzed by the Briggs Initiative, virtually all of California's first-degree murders are "death eligible." *Id.* Prior to the approval of the Briggs Initiative, only seven death sentences were imposed in California; in the two decades following voter approval of the Briggs Initiative, California courts imposed an average of thirty-two death sentences per year. As a result of the expansive Briggs Initiative, California's death-sentenced population has burgeoned to its current number of 734 inmates.

28. Those 734 individuals on California's death row are each entitled to the appointment of counsel to represent them in their direct appeal and collateral challenges before the California judiciary. This right was enunciated by the California Supreme Court in 1968. *See In re Anderson*, 69 Cal. 2d 613, 633 (1968). The right to appointment of state habeas corpus counsel for indigent death row persons subsequently was memorialized in the California Supreme Court Internal Operating Practices and Procedures, the California Supreme Court Policies, and by the Legislature in Government Code § 68662. *See In re Sanders*, 21 Cal. 4th 697, 718 (1999).

29. From the enactment of the 1977 Law until April 29, 2019, the California Supreme Court had the sole duty to appoint post-conviction counsel for death-row inmates. *See* former Cal. Gov't Code § 68662; Cal. Sup. Ct. Policies Regarding Cases Arising from Judgments of Death (adopted and effective June 6, 1989). In November 2016, California voters approved Proposition 66, which was promoted as the solution to the excessive delays plaguing California's death penalty process. Cal. Prop. 66 (2016). With the enactment of Proposition 66 and the promulgation of the court rules implementing its provisions in April 2019, the responsibility for such appointments was transferred to the superior court in which the judgment was entered against the death-row inmate. Cal. R. Ct. 4.545-4.562 (effective Apr. 29, 2019).

30. Beginning in the late 1980s, the Defendant Justices were unable to perform the duty to appoint post-conviction counsel as the ever-increasing population on death row outstripped the California Supreme Court's appointment capability. By June 1996, approximately 130 death-row inmates lacked appointed counsel to represent them in state post-conviction proceedings. *Ashmus v. Calderon*, 31 F. Supp. 2d 1175, 1186 (N.D. 1998) (citing findings in *Ashmus v. Calderon*, 935 F. Supp. 1048, 1055 (N.D. Cal. 1996)), *aff'd sub nom. Ashmus v. Woodford*, 202 F.3d 1160 (9th Cir. 2000). When the California Commission on the Fair Administration of Justice issued its Final Report in June 2008, the backlog of cases without habeas corpus counsel had more than doubled to 291 death-row inmates. Comm. Rep. at 134. Today, despite the enactment of Proposition 66 in 2016, 363 inmates lack such counsel.

31. The systemic failure to appoint qualified habeas corpus counsel for death-row inmates is well-documented. As the California Supreme Court noted, there is a serious shortage of qualified private counsel willing to accept an appointment as habeas corpus counsel in a death penalty case. *In re Morgan*, 50 Cal. 4th 932, 937-38 (2010). The California Commission on the Fair Administration of Justice found that this severe shortage of counsel has resulted from California's

failure to provide sufficient compensation and litigation expenses to attract private counsel to accept such appointments. Comm. Rep. at 135. Many qualified attorneys cannot afford to accept appointments and ethically fulfill their duties for the amount the California Supreme Court previously authorized in compensation: prior to the promulgation of the rules of court implementing Proposition 66, appointed habeas counsel were paid $145 per hour with a maximum expense budget of $50,000, a fraction of what expenses actually cost in a habeas action. *Id.* To illustrate, the successful habeas petition in *In re Lucas*, 33 Cal. 4th 682 (2004), necessitated $328,000 in litigation expenses. *Id.* at 135 n.72.

32. The financial disincentives for private counsel to accept appointments have increased since the publication of the Commission's Final Report. Since the enactment of Proposition 66 in November 2016, the authority for appointment of counsel has shifted to the California Superior Courts, but the rules implementing those provisions contain no guidance for the hourly rate to be paid to counsel or the provision of reasonable litigation expenses. Moreover, Proposition 66 provides no funding for such services in the Superior Courts.

33. The limitations on the Habeas Corpus Resource Center similarly have contributed to the severe backlog of appointments. The Center, which was established in 1998, was designed to provide representation to death-row inmates in post-conviction proceedings. Its mission was substantially limited by, *inter alia*, statutory restrictions on the number of attorneys it was permitted to employ. The original statute permitted the Center to hire only 30 attorneys; under the current statute it is authorized to hire only 34. Critically, noting the fact that eligible counsel were unable or unwilling to accept appointments in state capital habeas corpus cases, the California Commission on the Fair Administration of Justice suggested in its 2008 report on the state's death penalty system that the state Supreme Court's annual budget for habeas counsel appointments by the Habeas Corpus Resource Center alone receive a *five-fold* increase over its then-annual budget of $14.9 million.

Comm. Rep. at 145. Despite the increasing need for counsel to represent death-row inmates in collateral proceedings, no such authorization has occurred.

34. As a result of the underfunding of the capital indigent defense program, there has been a lengthy delay in the appointment of counsel for direct and collateral appeals since the relevant statute was enacted. Indeed, in 2014, Judge Cormac Carney of the Central District of California concluded that inordinate delay in the state's executions has resulted in an unconstitutional death penalty system.[1] *Jones v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014). Concern for the inordinate delay was also the foundation of California Proposition 66. The proponents of Proposition 66 sought to expedite judicial review of death sentences. Proposition 66 changed the procedures governing state direct and collateral appeals, including by placing a five-year time limit on those challenges[2] and requiring the trial court, rather than the California Supreme Court, to appoint state habeas counsel.

35. Proposition 66, however, has failed to ameliorate the systemic failure to appoint post-conviction counsel in a timely fashion. More than two and a half years after voters approved Proposition 66, death-row inmates still are not being appointed counsel for their collateral appeals. Indeed, the recent adoption of California Rules of Court 4.545 through 4.562, effective April 29, 2019, will result in further and unlawful delays in the appointment of such counsel. Unlike pre-Proposition 66 appointment and compensation procedures—which themselves were inadequate—the current Rules of Court contain no provisions for compensating counsel for the work performed on behalf of death-row inmates or for reimbursing counsel for necessary litigation expenses. Without any provision for compensation and litigation

[1] The Ninth Circuit reversed on the grounds that federal courts may not consider novel constitutional theories on habeas review. *See Jones v. Davis*, 806 F.3d 538 (9th Cir. 2015).

[2] The California Supreme Court subsequently found that the five-year limit is directive rather than mandatory. *See Briggs v. Brown*, 3 Cal. 5th 808 (2017).

expenses, the Superior Courts will not be able to attract qualified counsel to accept such appointments.

36. There has not been an execution in California in 13 years, and that is not likely to change in the near future. On March 13, 2019, Governor Gavin Newsom signed an executive order placing a moratorium on the death penalty. He said:

> The intentional killing of another person is wrong and as Governor, I will not oversee the execution of any individual. Our death penalty system has been, by all measures, a failure. It has discriminated against defendants who are mentally ill, black and brown, or can't afford expensive legal representation. It has provided no public safety benefit or value as a deterrent. It has wasted billions of taxpayer dollars. Most of all, the death penalty is absolute. It's irreversible and irreparable in the event of human error.

37. Despite the moratorium, 734 men and women in California are under death sentences. They still have the constitutional right to habeas corpus review and the statutory right to the appointment of habeas counsel. Despite these indisputable rights, 363 people currently on death row in California still do not have state habeas counsel. One death-row inmate continues to wait for the appointment of counsel more than 25 years after being sentenced, 51 have been awaiting the appointment of counsel between 20 and 24 years, 78 have been awaiting the appointment of counsel between 15 and 19 years, 79 have been awaiting the appointment of counsel between 10 and 14 years, 101 have been awaiting the appointment of counsel between five and nine years, and 49 have been awaiting the appointment of counsel between one and four years. As of today, based on the personal experience and knowledge of state habeas counsel, an individual on death row will wait two decades or more for the appointment of habeas corpus counsel.

38. The delay in the appointment of habeas corpus counsel significantly and adversely affects the ability of death-row inmates to develop, present, and prove that their convictions and sentences are unlawful. The lack of the timely appointment of habeas corpus counsel has deprived death-row inmates of crucial testimony from witnesses whose memories have faded or who have become impaired or died. During the delay, critical documents and other exculpatory evidence also have been lost or destroyed. In addition, the ability of some death-sentenced persons to participate in the development and presentation of potential meritorious habeas corpus claim has been impaired by their deteriorating physical and mental health. The timely appointment of habeas corpus counsel would have significantly alleviated the loss of potential evidence. Given the significant numbers of federal habeas petitions that are inevitably granted—as of 2014, 60 percent of all California capital inmates whose habeas claims were evaluated by the federal courts received relief from state court judgment—this delay is not only prejudicial but also a wrongful and irredeemable loss of freedom.

39. In addition to vindicating the constitutional rights of death-sentenced persons and securing new trials, timely-appointed state habeas corpus counsel are critical to ensuring the release of persons wrongly convicted of capital crimes. For example, in April 2018, the California Department of Corrections and Rehabilitations released Vicente Benavides from death row following successful state habeas corpus litigation. Mr. Benavides had been convicted and sentenced to death in 1993. In 1999, the California Supreme Court appointed the Habeas Corpus Resource Center to represent Mr. Benavides in his state proceedings. Following lengthy state habeas corpus proceedings, the California Supreme Court on March 12, 2018, granted Mr. Benavides' Petition for Writ of Habeas Corpus, finding "overwhelmingly" that "extensive, pervasive, and impactful" false testimony had been introduced at his trial. *In re Figueroa*, 4 Cal. 5th 576, 588, 591 (2018).

40. The delay in the appointment of habeas corpus counsel for Mr. Redd has significantly and adversely affected his ability to develop, present, and prove claims that his conviction and death sentence are unlawful. Since the imposition of the judgment against him, numerous witnesses—including immediate family members and at least one member of his trial defense team—have died, and many other persons with critical information have become infirm or impaired or have had substantial memory loss. In addition, as a result of the failure to timely appoint counsel, critical documents and other exculpatory evidence have been lost or destroyed.

## CLAIMS FOR RELIEF

### First Cause of Action
### Right to Due Process of Law

41. Plaintiff Redd and the Class he represents incorporate by reference paragraphs 1 through 40 as if fully restated here and further state the following:

42. Plaintiff Redd and the Class he represents are being deprived of a liberty and property interest in the timely appointment of counsel to represent them in their state habeas corpus actions challenging their convictions and death sentences. Plaintiff Redd and the Plaintiff Class are entitled to this liberty and property interest by judicial decision and state statute. The deprivation of this liberty and property interest, in turn, deprives them of their constitutionally protected right to petition federal courts for the writ of habeas corpus. This is because Plaintiff Redd and the Plaintiff Class must first exhaust state habeas proceedings before filing in federal court, which they cannot do unless they either wait an indeterminate and constitutionally inadequate amount of time to be appointed post-conviction counsel (and in the process lose helpful witnesses and evidence) or permanently waive the right to appointment of state habeas counsel.

43. When such a deprivation of liberty or property exists, there is a three-factor balancing test that determines what procedures are required. The following factors must be considered: (i) the importance of the interest to the Plaintiffs, (ii) the efficacy of the proposed remedies, and (iii) the administrative burden such remedies would impose. This is neither a determination of fact nor of state law; it is entirely a question of constitutional law for this Court. While the Defendants' actions, as well as various state and municipal actions, created expectations that vest liberty and property interests, only this Court may prescribe the procedures that may remedy the deprivations of those interests. All three factors of the balancing test weigh in favor of the Plaintiffs. The importance of the interest to receive procedural due process here cannot be understated; the proposed remedies would prevent incurable violations of such procedural due process rights; and the administrative burden would be less than the government is currently bearing.

44. There is no procedural mechanism by which Plaintiff Redd and the Plaintiff Class can challenge Defendants' failure to appoint habeas counsel at a meaningful time and in a meaningful manner. As discussed above, they are faced with the choice of either waiting the inordinate amount of time it takes for counsel to finally be appointed or permanently waiving their statutory right to the appointment of habeas counsel.

45. Defendants are responsible for the deprivation of Plaintiff Redd's and the Plaintiff Class's liberty and property interests in the timely appointment of state habeas counsel. Until Proposition 66 took effect in 2016, the California Supreme Court was obligated to appoint in a timely manner state habeas counsel after the imposition of the death sentence. As discussed above, that obligation went unfulfilled. Following the passage of Proposition 66 and the promulgation of court rules implementing the Proposition, Plaintiff Redd and the Plaintiff Class continue to be deprived of their liberty and property interests.

**Second Cause of Action**
**Right to Access the Courts and to Due Process of Law**

46. Plaintiff Redd and the Class he represents incorporate by reference paragraphs 1 through 45 as if fully restated here and further state the following.

47. Plaintiff Redd's and the Plaintiff Class's ability to access the courts to file the writ of habeas corpus is a fundamental right encompassed by the First Amendment's right to petition the government for redress and by the Fifth and Fourteenth Amendments' guarantees of due process. Defendants have the affirmative obligation to assure all prisoners meaningful access to the courts by carrying out their statutory obligation to appoint state habeas counsel to the men and women on death row.

48. Before Plaintiff Redd and the Plaintiff Class can access the federal courts to petition for writ of habeas corpus, they must exhaust the collateral review procedures available in California courts.

49. Defendants have failed to appoint state habeas counsel to Plaintiff Redd and the Plaintiff Class in a timely manner. This has resulted in a loss of witnesses and evidence necessary to bring their habeas petitions in state and federal courts. Plaintiff Redd and the Plaintiff Class can only circumvent the delay by permanently waiving their right to the appointment of state habeas counsel and, in the process, their right to meaningful access to the courts.

## PRAYER FOR RELIEF

50. Plaintiff Redd and the Class he represents have suffered—and unless granted the relief they request will continue to suffer—irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein. The need for relief is critical because the ongoing injury is a result of the violation of Plaintiff Redd's and the Plaintiff Class's fundamental rights as protected by the Fifth and Fourteenth Amendments to the Constitution, and this violation prevents meaningful access to collateral review in both state and federal courts.

51. WHEREFORE, Plaintiff Redd, on behalf of himself and the Class he represents, requests that the Court grant the following relief:

a. Declare the suit maintainable as a class action pursuant to Federal Rule of Civil Procedure 23;

b. Adjudge and declare that Defendants' failure to timely appoint counsel is in violation of the rights of Plaintiff Redd and the Class he represents under the Fifth and Fourteenth Amendments to the U.S. Constitution;

c. Adjudge and declare that such constitutional violation renders California's collateral review process ineffective to protect the rights of Plaintiff Redd and the Class he represents;

d. Award Plaintiff Redd and the Class he represents the costs of suit including reasonable attorneys' fees; and

e. Award Plaintiff Redd and the Class he represents such other and further relief as the Court deems just under these circumstances.

**JURY DEMAND**

Plaintiff Redd and the Class demands a trial by jury.

DATED: August 13, 2019

**PERKINS COIE LLP**

By: */Ronald A. McIntire*
Ronald A. McIntire, Bar No. 127407
RMcIntire@perkinscoie.com

Attorney for Plaintiff
STEPHEN MORELAND REDD